IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-3195

MARCIA L. TORBERSON,

                              Plaintiff,

v.

BOKF NA, d/b/a COLORADO STATE BANK & TRUST,

                              Defendant.

_____

## COMPLAINT AND JURY DEMAND
_____

PLAINTIFF MARCIA L. TORBERSON, by and through her counsel, Ciancio, Ciancio, Brown, P.C., alleges and states as follows:

### INTRODUCTION

1. Plaintiff Marcia L. Torberson (hereinafter "Ms. Torberson") is a former managerial employee of BOKF NA (hereinafter "BOKF" or "Employer"). Ms. Torberson was a conscientious employee of BOKF for over twelve years with an unblemished record of performance. The day after Ms. Torberson returned from an Employer-approved FMLA leave for a heart procedure, she was summarily terminated for allegedly "falsifying a customer's signature on a signature card." Employees under forty years of age, employees without a disability, and employees not exercising FMLA rights were treated more favorably than Ms. Torberson by, for instance, being afforded rights under BOKF's progressive discipline policy, by being provided an investigation

commensurate with years of service, or by being offered an option to transfer or voluntarily resign in lieu of being terminated for an alleged first-time infraction.

## JURISDICTION AND VENUE

2. This is a civil action arising under the laws of the United States and is brought pursuant to the Family and Medical Leave Act ("FMLA") (29 U.S.C. § 2601, *et seq.*), the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 623(a)(1) *et seq.*), and the Americans with Disabilities Act of 1990 ("ADAAA") (42 U.S.C. § 12101 *et seq.*). Plaintiff also alleges pendent state law claims of civil rights violations under the Colorado Anti-Discrimination Act ("CADA") (Colo. Rev. Stat. § 24-34-402, *et seq.*), the tort of retaliatory discharge in violation of public policy, and a claim for breach of implied contract.

3. Plaintiff invokes the jurisdiction of the court pursuant to Article III, § 2 of the U.S. Constitution, 28 U.S.C. §§ 1331, 1343, 1367(a), 2201 and 2202, and 29 U.S.C. § 2617.

4. Venue is fair and proper pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred in this district.

5. Plaintiff meets the prerequisites for filing suit under the ADEA, ADAAA and CADA:

    a. On September 14, 2018, Plaintiff dual-filed a Charge of Discrimination ("Charge") with the Colorado Civil Rights Division ("CCRD") and the Colorado Office of the Equal Employment Opportunity Commission ("EEOC") alleging that she was harassed and discriminated against in the terms and conditions of her employment and in her termination in violation of the ADEA, ADAAA,

  and CADA. A copy of the Charge is attached, and incorporated herein by reference, as **Exhibit 1**.

 b. On August 13, 2019, the CCRD issued to Plaintiff a Notice of Right to Sue ("Notice") Defendant in a district court in Colorado. The Notice is attached, and incorporated herein by reference, as **Exhibit 2**. This *Complaint* is filed within ninety days thereof.

## PARTIES

6. Plaintiff Marcia Torberson is a female over sixty years of age, not actively engaged in military service, disabled on the basis of a heart condition, and a resident of the County of Weld, State of Colorado, and a U.S. Citizen.

7. Defendant BOKF, NA, ("BOKF") is a corporation qualified to do, and is doing, business in the State of Colorado, with a principal place of business location of One Williams Center, PO Box 2300, Tulsa, OK 74172, United States.

8. At all times relevant to this *Complaint*, BOKF engaged in an industry affecting commerce, employing fifty or more persons within a 75-mile radius of Plaintiff's workplace for each working day for at least twenty workweeks in the year preceding Ms. Torberson's leave, and was an "employer" under the FMLA, ADEA, ADAA, and CADA. Specifically, BOKF, NA is a holding company that that controls or operates seven banks with branches in eight states.

9. At all times relevant to this *Complaint*, BOKF was acting through its agents, subagents, representatives, or its own employees or supervising employees, each of whom was acting within the course and scope of his or her agency or employment.

3

## ALLEGATIONS OF FACT

10. The above paragraphs are incorporated into the following allegations and claims for relief.

11. On or about July 14, 2006, Ms. Marcia L. Torberson was hired by BOKF as a Banking Center Manager and Assistant Vice President to open and manage the Boulder office, which she had led to a ranking of top 2 in the western division and top 5 among all BOKF consumer branches.

12. Throughout her tenure, the Boulder office was successful, Ms. Torberson performed the essential functions of her position, and there is no indication of any performance shortcomings or conduct questions in her dozen years before her July 2018 FMLA request.

13. Indeed, consistent with previous performance reviews, Ms. Torberson was meeting or exceeding BOKF's expectations including specifically on performance criteria relating to professional ethics, integrity and honesty.

14. Ms. Torberson also consistently received merit raises and awards from the commencement of her employment through her most recent performance review in March 2018.

15. For instance, during performance reviews in March 2017 and March 2018, James Grant, Group Center Manager promised Ms. Torberson a promotion from Banking Center Manager/Assistant Vice President to Vice President of her branch.

16. The Vice President position requires one to have the highest integrity in representing the Employer's values, and a commitment to serving the community.

17. The Vice President position is responsible for hiring, motivating and coaching a successful sales team including Senior Bankers and Senior Tellers, maintaining a large book of business including business and consumer clients, and meeting goals and providing customer service excellence.

18. On or about June 1, 2017, Ms. Torberson notified Human Resources and James Graham for the need for a medical leave for appointments to address her heart condition and provided them with necessary authorizations.

19. Ms. Torberson's heart condition substantially limits her from engaging in major life activities.

20. Ms. Torberson applied for, and was approved to take, FMLA leave for her heart condition on both an intermittent basis (06/22/17-01/07/18; 11/17/17-01/07/18; 01/08/18-06/21/18; **07/16/18-01/16/19**) and on a continuous basis (09/06/17-09/11/17; 09/25/17-09/27/17; 10/27/17-11/12/17; **07/06/18-07/15/18**).

21. On July 6, 2019, Ms. Torberson underwent her scheduled cardiac ablation without incident.

22. In the year immediately preceding July 6, 2018, Mr. Torberson worked for BOKF on a full-time basis, and had worked more than 1,250 hours.

23. Ms. Torberson returned to her managerial duties on July 16, 2018 with intermittent FMLA leave further approved through January 2019.

24. However, on July 17, 2018, Ms. Torberson was advised of an anonymous employee complaint alleging that a signature card of a deposit account for a customer Ms. Torberson was handling on June 22, 2018 was not authentic.

25. Ms. Torberson denies any knowledge of or involvement with the alleged falsification event reported to have occurred on or about June 26, 2018.

26. Ms. Torberson further attempted to explain that the customer was completely satisfied with her services, rated her "100%" on a "CS Alert," and was actively using the deposit account.

27. Ms. Torberson also relayed to BOKF that she understood her ethical obligations, had no reason to falsify any document, that her performance metrics were sound at the time the allegation was levied, that she had never before been accused of doing such a thing, and that she appreciated that committing any dishonest acts would jeopardize her employment and leave benefits at a time when she was particularly vulnerable.

28. Ms. Torberson requested that a thorough investigation be conducted including contacting the affected customer and reviewing the videotape surveillance to confirm who may have partaken in the alleged falsification activity.

29. Upon information and belief, a thorough investigation is afforded to an employee in BOKF's Banking Center Manager or Assistant Vice President position before implementing discipline for alleged performance or conduct violations.

30. Upon information and belief, progressive discipline is afforded to an employee in BOKF's Banking Center Manager or Assistant Vice President position for alleged performance or conduct violations.

31. BOKF concluded a *pro forma* investigation contacting none of Ms. Torberson's proffered witnesses including the customer allegedly affected by the alleged falsification event.

32. Ms. Torberson fully cooperated during the investigation including by answering all BOKF questions fully and honestly, by providing BOKF with requested documents, by providing BOKF with a rationale of why a subordinate, Sharmaine Cardenas, Senior Relationship Banker, may have had a retaliatory motive to falsify customer documents, and requested that BOKF contact the client to obtain their position about when the signature card was executed. Ms. Torberson also contacted security personnel Diana Saia to determine if BOKF could review the recorded security camera footage.

33. Upon information and belief, the customer affected by the alleged falsification event was a regular customer of Ms. Cardenas, who was away from the office on June 22, 2018, the date on which Ms. Torberson handled the customer's affairs.

34. Upon information and belief, BOKF did not investigate Ms. Cardenas to whom Ms. Torberson had issued informal discipline in or about March 2018.

35. BOKF refused to contact the involved customer opting, instead, to take at face value a complaint reported via BOKF's risk reporting hotline by an anonymous reporter who was informed by an anonymous co-worker, made at a time Ms. Torberson was on FMLA (intermittent) leave.

36. Over the statements of a 12-year Banking Center Manager/Assistant Vice President with 42-years of branch manager experience and an unblemished

7

performance and conduct record, BOKF chose to find credible the allegation of anonymous employees who, upon information and belief, were outside of Ms. Torberson's protected class (age/disability) and who did not exercise FMLA leave benefits.

37. Tasha Pitts, Senior Associate Relations Specialist, advised Ms. Torberson, via telephone, that her employment was terminated on July 26, 2018, ten days upon returning from leave and while on intermittent leave.

38. Similarly-situated employees outside of Ms. Torberson's protected class by age or disability were treated more favorably by, for instance, being provided larger raises, being promoted with fewer service years, not being summarily terminated for first-time alleged infractions, not being deprived of progressive discipline, or not being refused an option to resign or retire instead of being terminated.

39. Similarly-situated employees who did not exercise FMLA leave rights were provided larger raises, promoted with fewer service years, not summarily terminated for first-time alleged infractions, not deprived of progressive discipline procedures, not refused an option to resign or retire instead of being terminated, or not interfered with or retaliated against in the exercise of their FMLA rights.

40. BOKF's reasons for the above-described actions against Ms. Torberson were false or pretextual.

41. A showing of falsity, pretext or suspicion of mendacity, as in the instant case, creates a case for jury determination of Ms. Torberson's claims. *Tyler v. Re/Max Mtn. States, Inc.*, 232 F.3d 808 (10th Cir. 2000) ("[W]hen Plaintiff casts substantial

doubt on many of the employer's multiple reasons, jury could reasonably find employer lacks credibility.").

42. The above-described actions against Plaintiff demonstrate that BOKF terminated Ms. Torberson under circumstances which give rise to an inference that the termination was based on her age in violation of the ADEA.

43. The above-described actions against Plaintiff demonstrate that BOKF terminated Ms. Torberson under circumstances which give rise to an inference that the termination was based on her disability in violation of the ADAAA.

44. The above-described actions against Plaintiff were willful. They were also taken with malice and reckless indifference to Plaintiff's rights protected by law, warranting an award of exemplary damages.

45. Because of the above-described actions, Plaintiff has suffered: loss of her employment, with all attendant benefits and other amenities thereof, including pay, compensation, benefits and salary, as well as future pecuniary losses, present and future emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

46. Michael Williams, Tasha Pitts and Deana Dobbs were involved in the decision to terminate Ms. Torberson or in the delivery of the termination decision.

47. Although BOKF implements discipline progressively, for this first alleged offense, Ms. Torberson was summarily terminated ten days after returning from continuous FMLA leave and while on intermittent leave.

48. Ms. Torberson was replaced by Ms. Randi Rae Clark (non-disabled/under-forty), who holds the Banking Center Manager and *Vice President* position promised to Ms. Torberson in March 2017 and March 2018.

49. The above-stated paragraphs are incorporated into the following Claims for Relief, of which all wrongs against Plaintiff caused her damages as sought in the *Ad Damnum* clause below. In addition, the averments of the following claims are incorporated into each other.

## FIRST CLAIM FOR RELIEF
### (FMLA Interference, 29 U.S.C. 2615(a)(1))

50. By the aforesaid acts of interference against Plaintiff, Defendant violated the FMLA:

51. Defendant is an employer covered by the FMLA pursuant to 29 U.S.C. §2601 *et seq*. because it is a private business that employed fifty or more employees for each working day for at least twenty workweeks in the year prior to Ms. Torberson's leave.

52. Ms. Torberson was an FMLA-eligible employee because she was employed by BOKF for twelve years prior to requesting FMLA leave and had been employed by BOKF for over 1,250 hours in the twelve-month period prior to her request.

53. Ms. Torberson was entitled to FMLA leave because she took leave a heart condition including for a heart ablation procedure.

54. In accordance with the FMLA, on or about June 1, 2017, Ms. Torberson notified Michael Williams and Human Resources that she would need to take leave from July 5, 2017 through July 15, 2017.

55. Defendant engaged in prohibited conduct under the FMLA by interfering with, restraining, or denying Ms. Torberson's rights provided under the Act.

56. Defendant denied Ms. Torberson a benefit to which she is entitled under the FMLA in that it refused to allow Ms. Torberson to use the full amount of requested FMLA leave.

57. Defendant discouraged Ms. Torberson from fully using her FMLA leave by, for instance, failing to provide her with raises at the level provided to employees not exercising FMLA leave rights, by overlooking her for a promised promotion to on two occasions, and by failing to provide her with job protections upon her return to employment after her most recent FMLA continuous leave.

58. Defendant's action foreclosed Ms. Torberson's rights under the FMLA, including but not limited to the right to be returned to her position.

59. As a direct and proximate result of Defendant's wrongful acts and omissions, Ms. Torberson has suffered and continues to suffer substantial losses, including expenses related to additional medical treatment, and past and future lost wages and benefits. Ms. Torberson is also entitled to liquidated damages and attorneys' fees and costs, and other damages as recoverable by law.

**SECOND CLAIM FOR RELIEF**
**(FMLA Retaliation, 29 U.S.C. 2615(a)(2))**

60. By the aforesaid acts of retaliation against Plaintiff, Defendant violated the FMLA:

61. Ms. Torberson exercised her FMLA rights by taking FMLA leave from her job most recently from July 6, 2018 to July 15, 2018.

11

62. Ms. Torberson was qualified for her position and had performed her job duties effectively prior to the acts complained of herein.

63. Ms. Torberson suffered an adverse employment action in that she was, for instance, subjected to substandard raises, was overlooked for a promised promotion on two occasions, and not provided due process or progressive discipline for an alleged first-time infraction in her dozen years of employment with BOKF.

64. Defendant's disparate treatment of Ms. Torberson began in earnest within days after her return to work from continuous FMLA leave and while on intermittent FMLA leave.

65. Defendant's decision to fire Ms. Torberson on July 26, 2018 occurred just days after Ms. Torberson exercised FMLA leave benefits from July 6 through July 16.

66. Defendant's alleged reason for terminating Ms. Torberson's employment is pretextual and baseless. Defendant fired Ms. Torberson because she exercised FMLA leave benefits.

67. Defendant's conduct constitutes unlawful retaliation against Ms. Torberson in violation of Ms. Torberson's rights under the FMLA.

68. As a direct and proximate result of Defendant's wrongful acts and omissions, Ms. Torberson has suffered and continues to suffer substantial losses, including expenses related to additional medical treatment and past and future lost wages and benefits. Plaintiff is also entitled liquidated damages and attorney's fees and costs, and other damages as recoverable by law.

### THIRD CLAIM FOR RELIEF
**(Violation of the ADEA, 29 U.S.C. § 623(a)(1) *et seq.*)**

69. By the aforesaid acts of discrimination against Plaintiff, Defendant breached the ADEA.

### FOURTH  CLAIM FOR RELIEF
**(Violation of the ADAAA 42 U.S.C. §§ 12101 *et seq.*)**

70. By the aforesaid acts of discrimination against Plaintiff, Defendant breached the ADAAA.

### FIFTH  CLAIM FOR RELIEF
**(Violation of CADA, Colo. Rev. Stat. § 24-34-402, *et seq.*)**

71. By the aforesaid acts of discrimination against Plaintiff, Defendant breached the provisions of CADA.

### SIXTH CLAIM FOR RELIEF
**(Retaliatory Discharge)**

72. By the aforesaid acts against Plaintiff, Defendant discharged Plaintiff in violation of Colorado's public policy:

73. During the course of employment, Plaintiff exercised an important work-related right or privilege relating to medical leave.

74. Defendant was aware or reasonably should have been aware that Plaintiff had a right to exercise her right or privilege as a worker.

75. Defendant discharged Plaintiff because she exercised her right or privilege as a worker.

### SEVENTH CLAIM FOR RELIEF
### (Breach of Implied and/or Quasi-Contracts)

76. Various of Defendant's policies, procedures, or other commitments became an implied part of Defendant's offer of employment or of the terms or conditions of Plaintiff's regular, full-time employment.

77. Defendant's policies, procedures, or other commitments included, without limitation:

    a. Progressive discipline procedures;

    b. Fairness or due process during workplace investigations; and

    c. Protection from retaliation of any kind.

78. Plaintiff accepted Defendant's offer, or continued employment, with an understanding Defendant would not breach its promises.

79. By its failures to honor its promises, Defendant has breached implied contracts or quasi-contracts with Plaintiff.

### PRAYER AND JURY DEMAND

WHEREFORE, Plaintiff respectfully moves this court and prays for:

a. a declaratory judgment declaring that Defendant has violated the above-described statutes and committed the above-described wrongs by the aforesaid acts against Plaintiff;

b. liquidated damages pursuant to 29 U.S.C. §2617(a)(1)(A)(iii);

c. re-employment to a position with Defendant comparable to her former position with restoration of the level of compensation and other amenities of employment that she would be earning were it not for the wrongful and illegal

actions described herein, or, in lieu thereof, an award of front pay (including benefits);

d. all compensation, back pay, equal pay, front pay and benefits that Plaintiff was denied because of Defendant's acts, in a sum to be determined by the court and jury;

e. liquidated and compensatory damages, including for past, present and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, in a sum to be determined by the court and jury;

f. exemplary or punitive damages in a sum to be determined by the court and jury;

g. reasonable attorney's fees, disbursements, expert fees, and costs of this action;

h. all legal interest on sums awarded;

i. all issues so triable to be decided by a jury;

j. such other relief as the court may deem appropriate.

Dated this 11th day of November, 2019.

Respectfully submitted,

CIANCIO, CIANCIO, BROWN, P.C.

*/s/ Dipak P. Patel*
390 Interlocken Cres. Ste. 350
Broomfield, CO 80021
(303) 451-0300 telephone
(303) 464-8000 facsimile
dipakpatel@colo-law.com

*Attorneys for Plaintiff*

**Plaintiff's Address:**

Marcia L. Torberson
2875 Blue Sky Circle, Unit 4-104
Erie CO 80516