**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Case No. 19-cv-3195-WJM-STV

MARCIA L. TORBERSON,

    Plaintiff,

v.

BOKF NA, d/b/a COLORADO STATE BANK & TRUST,

    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION TO STRIKE**

This matter is before the Court on Defendant BOKF NA, d/b/a Colorado State Bank & Trust's ("BOKF") Motion for Summary Judgment (ECF No. 41) and Motion to Strike (ECF No. 51). For the following reasons, the Motion for Summary Judgment is granted and the Motion to Strike is denied.

**I. STANDARD OF REVIEW**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND[1]

This action arises out of Plaintiff Marcia Torberson's allegedly unlawful termination from her employment by BOKF. (ECF No. 1.) BOKF is a national banking association headquartered in Tulsa, Oklahoma. BOKF employed Torberson as a banking center manager of its Boulder, Colorado location from 2006 until 2018.

On June 22, 2018, Torberson opened a home equity line of credit for a couple who were BOKF customers. The customers came to the bank and signed certain documents associated with the line of credit.

Also on June 22, 2018, after the customers had left the bank, Torberson opened a deposit account for them. Opening the account required use of a "signature card," a card signed by the customers. Torberson placed the documents associated with these transactions in a bag after completing the account opening process and placed the bag in a vault at the bank. Torberson disputes BOKF's description of the bag as "tamper-proof," as it may be opened with scissors and resealed, but testified in her deposition that it was tamper-proof. (ECF No. 46 at 4; ECF No. 41-23 at 19.)

---

[1] The following factual summary is based on the parties' Motions and documents submitted in support thereof. These facts are undisputed unless attributed to a party or source. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination. The Court does not cite the briefs for undisputed facts.

2

On June 29, 2018, BOKF received an anonymous tip through its risk reporting telephone hotline, stating that Torberson had forgotten to obtain the customers' signatures on the signature card and therefore photocopied their signatures from other documents onto the signature card to open their deposit account.

Between July 6, 2018 and July 13, 2018, Torberson took medical leave pursuant to the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA") relating to a procedure for her medical condition of atrial fibrillation.

On July 17, 2018, after Torberson had returned from her FMLA leave, BOKF's human resources representative interviewed Torberson regarding the signatures and provided Torberson time to review her e-mail communications for proof that the customers had sent their signatures via e-mail. She did not provide any documentation that the customers had sent the signatures by e-mail.

On July 18, 2018, the anonymous risk reporter contacted BOKF again and provided more detail. The reporter again stated that Torberson copied the signatures from the packet the customers had signed and that she did not send the signature cards to the bank teller as was customary because they were not genuine.

BOKF conducted an internal investigation, compared the signatures on the card to the signatures on the packet from which Torberson allegedly copied them, and determined that the signatures had been falsified. Torberson does not dispute that the signatures were falsified but denies any knowledge of or involvement in such falsification. (ECF No. 46 at 2.)

On July 26, 2018, ten days after Torberson's return from her July leave, BOKF terminated Torberson's employment. The official reason for Torberson's termination

was the falsification of the signatures.  Torberson oversaw two employees during the relevant time: Sharmaine Cardenas and Anna Cutbirth.[2]

Torberson initiated this action on November 11, 2019.  (ECF No. 1.)  She brings a total of seven claims: (1) FMLA interference; (2) FMLA retaliation; (3) discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 623, *et seq.* ("ADEA"); (4) discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"); (5) discrimination in violation of the Colorado Anti-Discrimination Act, Colo. Rev. Stat. §§ 24-34-402, *et seq.* ("CADA"); (6) retaliatory discharge in violation of Colorado's public policy; and (7) breach of implied contract.  (*Id.* ¶¶ 50–78.)

BOKF filed its Motion on December 11, 2020, seeking summary judgment against Torberson on all claims.  (ECF No. 41.)  Torberson responded on January 4, 2021, and BOKF replied on January 19, 2021.  (ECF Nos. 46 & 52.)

Also on January 19, 2021, BOKF filed its Motion to Strike, seeking to strike certain portions of exhibits to Torberson's response to the Motion.  (ECF No. 51.)  Torberson responded to the Motion to Strike on February 23, 2021, and BOKF replied on March 9, 2021.  (ECF Nos. 58 & 60.)

### III. ANALYSIS

**A.    Motion to Strike**

BOKF asserts in its Motion to Strike that the Court should strike portions of three affidavits attached to Torberson's Response.  (ECF No. 51.)  BOKF contends that these

---

[2] Torberson disputes this fact, claiming that Cutbirth was terminated on July 25, 2018 and therefore she was not an employee during the relevant time.  This dispute is immaterial, however, as Torberson concedes that Cutbirth was her subordinate from the June 22, 2018 account opening until her termination on July 25, 2018.

4

affidavits contain impermissible hearsay statements, are based on speculation rather than personal knowledge, or are attempts to create sham issues of fact. (*Id.* at 1–2.) BOKF therefore argues that these statements should not be considered as evidence in evaluating the Motion for Summary Judgment. (*Id.* at 1.)

For the sake of brevity—and construing the summary judgment briefing in favor of Torberson as the non-moving party—the Court will assume without deciding that it may properly consider all exhibits attached to Torberson's Response, as such consideration does not alter the Court's analysis or conclusion. The Motion to Strike is therefore denied.

**B.     Motion for Summary Judgment**

  i. *Claim One: FMLA Interference*

To sustain a claim for interference with FMLA leave, a plaintiff must demonstrate that: (1) she was entitled to take FMLA leave; (2) some adverse action by the employer interfered with her right to take FMLA leave; and (3) the employer's action was related to the exercise or attempted exercise of her FMLA rights. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006). An employer may terminate an employee, however, even if the termination interferes with the employee's FMLA exercise, "if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002).

BOKF contends that Torberson cannot establish a claim for FMLA interference because she does not provide any evidence suggesting that her discharge was related to her exercise of her FMLA rights, and therefore she cannot satisfy the causation

5

element of the inquiry. (ECF No. 41 at 27.) In response, Torberson appears to suggest that the temporal proximity between her taking leave and her termination is sufficient evidence that it was the reason for her discharge. (ECF No. 46 at 17.)

First, Torberson's assertion of temporal proximity is misleading because she admits to taking FMLA leave intermittently throughout 2017 and 2018. (ECF No. 46 at 13.) Second, the falsification of the signatures occurred immediately prior to her taking FMLA leave in July 2018, which is the independent reason provided for her discharge. In these circumstances, however, it is not legally sufficient for Torberson to use the mere fact that she took FMLA leave as evidence that it was the reason for her discharge. *See Smith*, 298 F.3d at 961 (stating that an employee who requests an FMLA leave has no greater rights than an employee who does not request such leave).

As Torberson points to no evidence that her exercise of FMLA rights had any bearing on her termination whatsoever, she has failed to create a genuine issue of material fact as to her FMLA interference claim. Accordingly, BOKF is entitled to summary judgment on Claim One.

    ii.    *Claim Two: FMLA Retaliation*

To establish a *prima facie* claim for FMLA retaliation, a plaintiff must show that: (1) she availed herself of a protected right under the FMLA; (2) an employment decision adversely affected her; and (3) there was a causal connection between the exercise of her FMLA rights and the adverse employment action. *See Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1104 (10th Cir. 2005). The Tenth Circuit has held that temporal proximity between exercise of a right under the FMLA and an adverse employment action is sufficient to establish a causal connection for the purposes of a retaliation

claim.  *See Metzler*, 464 F.3d at 1172 (finding that termination occurring six weeks after employer learned that employee planned to take FMLA leave was sufficient for causation).

The parties agree that Torberson availed herself of FMLA leave and that she was discharged ten days after her return.  (ECF No. 41 at 10; ECF No. 46 at 3.)  Although the Court is dubious as to the causal connection between Torberson's FMLA leave and her subsequent termination, she has established a *prima facie* case of retaliation.  *See Metzler*, 464 F.3d at 1172.

Claims for FMLA retaliation are subject to the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See id.* at 1180.  Under this framework, a plaintiff bears the initial burden of supporting a *prima facie* case of retaliation.  *See id.* at 1170.  If satisfied, the defendant must offer a legitimate, non-retaliatory reason for the employment action at issue.  *See id.*  The plaintiff then must offer evidence that the proffered legitimate reason is pretextual.  *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003).

As the parties do not dispute that forgery is a legitimate, non-retaliatory reason for termination, the Court proceeds to the question of whether BOKF's reason was pretext for a retaliatory motive.

"A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence."  *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2004) (quoting *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994)).  In evaluating whether a reason is pretextual, a court must not ask "whether the employer's

proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004). Rather, a court may not "act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006).

Torberson asserts that the signature falsification was pretextual because the BOKF failed to investigate her co-workers, Cardenas and Cutbirth, who she contends had motive to falsify the signatures because they wanted her to be discharged. (ECF No. 46 at 16.) Torberson further asserts that BOKF should have retrieved surveillance footage or allowed her to undergo a polygraph test and that the absence of these additional procedures rendered the investigation a "sham." (*Id.* at 9.)

Torberson does not point to any specific evidence indicating that the investigation was pretextual or a sham, though the Court presumes she is referring to her contention that Cardenas and Cutbirth harbored animosity toward her. (ECF No. 46 at 21 ("[Torberson's] termination was ultimately a result of a targeted investigation instigated by unhappy subordinates.").) While Torberson asserts that Cardenas and Cutbirth wanted her to be discharged, she does not offer any evidence, credible or otherwise, that BOKF conducted its investigation with the same animus allegedly harbored by her subordinate employees, or that it did not genuinely believe that Torberson falsified the signatures.

Moreover, and perhaps more importantly, Torberson makes no argument and offers no evidence as to how the true reason for her termination was in any way connected to her FMLA leave. Given the lack of any evidence that BOKF did not

8

believe in good faith that Torberson falsified the signature card—particularly considering the undisputed evidence that Torberson met with the customers, processed the relevant documents, and had exclusive access to the cards—Torberson has failed to meet her burden in the context of a Defendant's summary judgment motion of showing that there exists a genuine issue of material fact that Defendant's reason for discharge was pretextual.  Further, as discussed, Torberson fails to raise any facts suggesting that her FMLA leave was connected to her termination.  BOKF is therefore entitled to summary judgment on the FMLA retaliation claim.  *See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998) (stating that to withstand summary judgment, an employee's termination must be related to the request for FMLA leave).

      iii.      *Claims Three, Four & Five: ADA, ADEA & CADA Discrimination*

Torberson brings claims for discrimination in violation of the ADA, ADEA, and CADA.  (ECF No. 1 ¶¶ 69–70.)  Although she does not set forth a specific factual basis for these claims, the Court assumes that she intends to assert that BOKF discharged her due to her disability (namely, her medical condition of atrial fibrillation) and her age (over sixty years).

The *McDonnell Douglas* burden-shifting analysis governs claims for discrimination under the ADA, ADEA, and CADA.  *See Metzler*, 464 F.3d at 1180; *Angell v. Fairmount Fire Prot. Dist.*, 907 F. Supp. 2d 1242, 1255 (D. Colo. 2012) (stating that courts "apply the same standards to discrimination claims" under federal and state law because they "rise or fall" together).

Assuming without deciding that Torberson has established a *prima facie* case of discrimination, as discussed, she has failed to establish a factual dispute as to whether

9

BOKF's purported reason for her discharge was pretext for an impermissible motive. Rather, even if Torberson's theory that her subordinates framed her were true, she fails to point to any evidence that BOKF's reason for discharging her was related to her age or disability.

To the extent that Torberson relies on the fact that Cardenas and Cutbirth had previously teased her for being a "boomer," a reference to her age (ECF No. 46-30 at 83), such stray comments have no bearing on whether Torberson's termination was legitimate.[3]  *See Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000) (stating that stray remarks by a non-decisionmaker are not actionable as employment discrimination).  Torberson also offers no evidence that BOKF had knowledge of these employees' statements, nor that they in any way influenced BOKF's decision to terminate Torberson.[4]

Finding that Torberson has presented no evidence which would create a genuine issue of material fact as to whether the official reason for her termination was pretext for age or disability discrimination, BOKF is entitled to summary judgment on the ADA, ADEA, and CADA claims.

    iv.    *Claim Six: Retaliatory Discharge in Violation of Public Policy*

Torberson brings a claim for retaliatory discharge in violation of Colorado public policy.  (ECF No. 1 ¶¶ 72–75.)  Torberson bases her retaliatory discharge claim on her taking FMLA leave.  (ECF No 1 ¶¶ 73–75 ("During the course of employment, Plaintiff

---

[3] Interestingly, Torberson also testified that such comments were made "all in fun" and that the employees had "no intent or any intention of hurt or harm."  (ECF No. 41-23 at 83.)
[4] Additionally, Torberson alleges that Cardenas and Cutbirth framed her in response to her counseling them for disciplinary infractions, which is unrelated to her protected status.  (ECF No. 46 at 3, 21.)

10

exercised an important work-related right or privilege relating to medical leave.").) BOKF contends that the FMLA precludes this claim, however, "because the FMLA provides its own remedy for retaliatory discharge." (ECF No. 41 at 30; *Krauss v. Catholic Health Initiatives Mountain Region*, 66 P.3d 195, 203 (Colo. App. 2003).)

Torberson argues that the CADA does not preclude a claim based on violation of public policy, and therefore her retaliatory discharge claim remains viable. (ECF No. 46 at 25–27.) She relies on *Kennedy v. Colorado RS, LLC*, 872 F. Supp. 2d 1146 (D. Colo. 2012), for the proposition that a wrongful discharge claim may proceed where it is premised on the same conduct as a CADA claim. (*Id.* at 26.)

The court in *Kennedy* expressly found that the plaintiff's retaliatory discharge claim was barred to the extent it was premised on the ADA because the federal statute provided a remedy. *Kennedy*, 872 F. Supp. 2d at 1149. Because the *Kennedy* plaintiff's CADA claim was based on sex discrimination, rather than disability discrimination, the court allowed the retaliatory discharge claim to proceed because no federal law covered the claim. *See id.*

Here, Torberson's CADA claim is premised on the same conduct as her ADA and ADEA claims for discrimination, not FMLA retaliation. (ECF No. 1 ¶ 71; ECF No. 46 at 24–25 (listing elements of discrimination).) *Kennedy* does not provide support for Torberson's contention that she may sustain a duplicative claim for wrongful discharge under state law where a federal statute already provides a complete remedy for the harms and damages she alleges she has suffered.

Because the FMLA provides the exclusive remedy for retaliation based on medical leave, Torberson's FMLA retaliation claim precludes her state law retaliatory

11

discharge claim. *See Krauss*, 66 P.3d at 203. Accordingly, BOKF is entitled to summary judgment on Claim Six.

        v.      *Claim Seven: Breach of Implied Contract*

Torberson asserts that her termination violated an implied or quasi-contract because she was entitled to progressive discipline rather than immediate termination even assuming that she had falsified the signatures. (ECF No. 1 ¶¶ 76–79.) She refers to statements in BOKF's Employee Handbook that "[n]o employee should take unfair advantage of persons regarding BOKF business through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or unfair dealing," presumably referring to her theory that her subordinates falsely reported her. (ECF No. 46 at 27–28.)

The Tenth Circuit addressed an analogous situation in *Young v. Dillon Companies*, 468 F.3d 1243 (10th Cir. 2006). In *Young*, the plaintiff brought a breach of implied contract claim after his termination for failure to clock out at the end of his shift. *Young*, 468 F.3d at 1254. The *Young* plaintiff contended that he was entitled to progressive discipline rather than immediate termination despite his at-will employment status. *See id.* at 1254–55. The *Young* court affirmed summary judgment as to the defendant employer, finding that the employer had not manifested any intent to be bound by further due process policies, despite a manager's comment that an employee typically would not be discharged based on a failure to clock out the first time. *See id.* at 1255.

Here, Torberson admits that she was an at-will employee in the absence of a contract with BOKF and concedes that BOKF's policies reflect that the falsification of

bank documents carries the consequence of immediate termination of employment. (ECF No. 46 at 27; ECF No. 41-23 at 93–94.) Further, the Employee Handbook contains an explicit disclaimer, stating that it is "not intended to create a contract between BOKF and any employee, and shall not be relied upon as such by any employee." (ECF No. 41-21 at 3.) Courts in the Tenth Circuit have repeatedly held such disclaimers to be effective in precluding a claim based on an implied contract. *See, e.g.*, *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1324 (10th Cir. 2005); *Vance v. Tolmar, Inc.*, 2018 WL 1456275, at *8 (D. Colo. Mar. 23, 2018).

Torberson presents no evidence that BOKF manifested an intent to be bound by additional procedures and thereby modify the at-will employment relationship, and any suggestion to the contrary is undercut by the fact that the Employee Handbook explicitly disclaims such intent. (ECF No. 41-21 at 3.) Given the at-will nature of the employment relationship and the absence of any evidence that BOKF intended to alter the relationship, Torberson fails to raise any genuine issue of material fact as to an implied contract entitling her to additional due process procedures such as progressive discipline. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244–45 (10th Cir. 2009) (granting summary judgment to employer on breach of implied contract claim because forgery was a terminable offense and plaintiff had no reasonable belief that he would not be discharged). Accordingly, BOKF is entitled to summary judgment on Claim Seven.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. BOKF's Motion for Summary Judgment (ECF No. 41) is GRANTED;
2. BOKF's Motion to Strike (ECF No. 51) is DENIED;

3.  The Clerk shall enter judgment in favor of Defendant BOKF and against Plaintiff Marcia Torberson and shall terminate this case; and

4.  BOKF shall have its costs upon the filing of a bill of costs in accordance with the procedures under Federal Rule of Civil Procedure 54(d) and District of Colorado Local Civil Rule 54.1.

Dated this 5th day of August, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge